The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Hue Esther KELLUM, Defendant–Appellant.

No. 93CA1859.

Colorado Court of Appeals, Div. I.

Aug. 24, 1995.

Rehearing Denied Oct. 19, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Susan J. Schneider, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

This appeal by defendant, Hue Esther Kellum, from the judgment of conviction of unlawful possession of a controlled substance raises the single issue whether investigating officers received proper consent for their search of that part of defendant's bedroom where they uncovered two bindles of cocaine. We conclude that they did. Therefore, we affirm the judgment of conviction.

Defendant lived in a three-bedroom mobile home which he owned and shared with his brother. Each of the two mutually occupied the area set aside as a living room and kitchen, but each separately occupied his individual bedroom.

At the hearing before the trial court, the People, relying on *People v. Savage*, 630 P.2d 1070 (Colo.1981), asserted that, because the defendant's brother was a co-owner of the mobile home, that ownership status alone was sufficient to allow the brother to consent to a search of all portions of that facility. Hence, it presented no direct, competent evidence to establish the extent to which the brother had control over defendant's bedroom.

Defendant, however, testified that his brother regularly cleaned defendant's bedroom, but his other testimony implies that the brother had no access for other purposes.

On the day that the search was conducted of defendant's bedroom, law enforcement officers came to defendant's residence and arrested him. The officers removed him from the premises, and three persons who had been visiting with defendant in his bedroom also left. The officers then solicited the brother's consent to search the home.

According to the officers, they asked the brother whether his "access" to defendant's bedroom was "restricted" in any manner, and he assured them that it was not. They also said that the brother then gave them his consent to search throughout the entire residence.

Defendant's brother denied being questioned about his right of access to defendant's room. He testified that he was "probably" asked by the officers if they could "look around" and that he "probably" said that that would be "all right." He claims, however, that he was "confused" at the time.

Defendant had a large waterbed in his bedroom. In the officers' search of this room, one of them pulled up the edges of the

waterbed "mattress," enabling him to place his hands underneath a distance of 12 to 18 inches, around the entire bed. According to the officer who engaged in this activity, he was unable to lift the mattress any higher or to obtain further access beneath it because of its weight and size. The officer testified that the bindles of cocaine were extracted from beneath the mattress at the foot of the bed.

The trial court concluded that the brother, as a co-owner of the mobile home, who regularly had access to defendant's bedroom for cleaning purposes, had actual authority to consent to the search of the bedroom.

Defendant argues, however, that, even if the evidence that the brother had access to defendant's bedroom was sufficient to allow a general search of that room, there was no evidence that the brother had authority to allow a search of every "enclosed space" within that room. He asserts that, even with the access that this record shows the brother had to defendant's bedroom, defendant continued to have a reasonable expectation of privacy in particular and discrete enclosures within that room—including the area under the mattress of his bed—so that the brother had no actual authority to consent to a search of such areas. We disagree.

■ Contrary to the People's argument before the trial court, mere ownership of premises does not carry with it the authority to consent to the search of that portion of the premises which is occupied by another. *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel clerk cannot consent to search of guest's quarters); *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord cannot consent to search of lessee's quarters).

■ Even if the premises are jointly occupied, in order to rely upon the actual authority of a co-occupant to consent to a search of any portion of those premises, it must be demonstrated that the co-occupant "possesses common authority over [the] premises or effects" where the search is conducted. This means that the evidence must establish:

> mutual use of the property by persons generally having joint access or control for

*most* purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock,* 415 U.S. 164, 171 (fn. 7), 94 S.Ct. 988, 993 (fn. 7), 39 L.Ed.2d 242, 250 (fn. 7) (1974) (emphasis supplied).

Thus, in *People v. Savage, supra,* in which it was demonstrated that four persons, including the defendant, jointly and commonly used the "living area" of the trailer, where items of stolen property were found, the consent to the search of that area by one of the occupants validated it as to all.

■ However, proof of access to or mutual use of a room within a residence does not necessarily constitute proof of access to and mutual use of every enclosed space within that room.

For example, in requiring suppression of items seized from a locked footlocker belonging to the defendant, which was within a bedroom to which several persons had access, the court in *United States v. Block,* 590 F.2d 535, 541 (4th Cir.1978), made the following observation:

> While authority to consent to search of a general area must obviously extend to most objects in plain view within the area, it cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area.

Rather, the court reviewing the nature of the alleged consent must assess those circumstances:

> indicating the presence or absence of a discrete expectation of privacy with respect to the particular object: whether it is secured, whether it is commonly used for privacy, etc.

*United States v. Block, supra* (fn. 8).

Other courts have reached similar conclusions. *See United States v. Wilson,* 536 F.2d 883 (9th Cir.1976) (apartment resident had no authority to consent to search of closed but unlocked suitcases left on premises by

defendant), *cert. denied,* 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976); *Reeves v. Warden,* 346 F.2d 915 (4th Cir.1965) (one occupant of home had no authority to consent to search of bureau in defendant's bedroom, although she cleaned room and put defendant's clean clothes in bureau); *Holzhey v. United States,* 223 F.2d 823 (5th Cir.1955) (daughter, who owned home, had no authority to consent to search of locked cabinet kept by mother in sleeping area of home). *See also United States v. Welch,* 4 F.3d 761 (9th Cir.1993) (while one of two lessees of rental car could consent to search of vehicle itself, that person could not consent to search of closed purse owned by other lessee and left in vehicle).

While the United States Supreme Court has not yet issued an opinion expressly adopting this distinction, at least two of its members, Justices O'Connor and Rehnquist, have recognized its validity. *See United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (O'Connor, J., concurring).

The direct evidence here supports the trial court's finding that the brother had general access to defendant's bedroom for cleaning purposes.

■ Hence, given the brother's "mutual use" of defendant's bedroom, the issue presented is whether defendant had both a subjective *and reasonable* expectation that the area under the waterbed mattress would remain private and not accessible to his brother, or whether, having granted to his brother the right to clean the bedroom, defendant assumed the risk that the brother would have legitimate access to that space. *See United States v. Matlock, supra; People v. Breidenbach,* 875 P.2d 879 (Colo.1994).

■ Further, while we should give weight to the trial court's determination of the question of the brother's authority to consent to the search, we must, nevertheless, review the issue on a *de novo* basis. *People v. McKinstrey,* 852 P.2d 467 (Colo.1993).

■ In this respect, we conclude that a person who authorizes another occupant of a home to have access to that person's sleeping quarters for cleaning purposes cannot rea-sonably expect that the cleaning function will not entail access to the space 12 to 18 inches under the bed's mattress. Such a person, therefore, cannot have a reasonable expectation of privacy in such space. *See Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (by allowing use of compartment of duffel bag, defendant assumed risk that such user would consent to search of entire bag).

We conclude, therefore, that the search here was conducted pursuant to a valid consent thereto and that the court did not err in refusing to suppress the items discovered during that search.

Judgment affirmed.

METZGER and KAPELKE, JJ., concur.