The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Columbus Michael **WHITE,** Defendant–Appellant.

No. 99CA2415.

Colorado Court of Appeals, Div. II.

June 20, 2002.

Rehearing Denied Sept. 26, 2002.

Certiorari Denied Feb. 24, 2003.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

James Grimaldi, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Columbus Michael White, appeals the judgment of conviction entered on a jury verdict finding him guilty of felony murder, second degree murder, and second degree burglary. We affirm the felony murder conviction but vacate the convictions for second degree murder and second degree burglary.

## I. Facts and Procedural History

On the afternoon of April 28, 1998, the victim, an eighty-six year-old grandmother, was attacked and killed inside her home. She had been bludgeoned and stabbed several times, her pants were lowered and an "X" was carved into her buttock. Police determined that the cause of death was a dislocated neck.

Police found the following evidence at the crime scene: (1) the victim's hammer, which had been smashed into her television screen; (2) a knife in the kitchen sink; (3) bloody shoeprints on the floor near the bathroom where the victim was found; (4) emptied boxes of single serving packets of coffee and oatmeal on the kitchen floor; and (5) fingerprints, later determined to be defendant's, on the outside window sill.

Using dogs, the police followed the intruder's scent from the victim's house to the house of defendant's girlfriend. Inside the girlfriend's house, police found defendant's bloody tennis shoes. Testing later revealed that the sole pattern of the tennis shoes matched the shoeprints found inside the victim's house, and the victim's blood matched the blood found on the shoes. Police also found single serving packets of coffee and oatmeal in the girlfriend's house. The girlfriend told police that defendant brought the packets of food to her house.

Two witnesses also testified that they saw a person fitting defendant's description near

the victim's home on the afternoon she was murdered.

The police contacted defendant at his father's house at 1:30 a.m. on the morning after the murder. A family friend had invited the police to enter. While police interviewed defendant and his father, a detective noticed more packets of oatmeal. The detective also noticed that defendant had blood splattered on his jeans. Testing later revealed that the blood on defendant's jeans matched the victim's blood. Police subsequently arrested defendant and charged him with felony murder, first degree murder (after deliberation), and second degree burglary. Defendant was seventeen years old at the time of the murder.

Defendant filed a motion to suppress all evidence that police seized at his father's and girlfriend's homes, as well as all statements he made to police. After a four-day hearing, the trial court denied defendant's motion in a detailed and well-written twenty-five page order.

Defendant maintained at trial that two separate and unrelated burglaries had occurred at the victim's house on the day of the murder. During the first burglary, he contended, another intruder had murdered the victim. The second burglary, for which he admitted responsibility, allegedly occurred after the victim was already dead.

A jury convicted defendant of felony murder, second degree burglary, and second degree murder, a lesser included offense of first degree murder (after deliberation). The trial court sentenced defendant to life in prison on the felony murder and concurrent sentences of forty-eight years on the second degree murder and twenty-four years on the burglary. This appeal followed.

## II. Suppression Issues

Defendant advances four different reasons why the trial court erred when it denied his motion to suppress his statements and the evidence obtained at the homes of his father and girlfriend. We disagree.

Both the United States and Colorado Constitutions afford protection from unreason-able searches and seizures. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7.

However, the Fourth Amendment does not protect a defendant from police intrusions that do not abridge a legitimate expectation of privacy. The existence of a legitimate expectation of privacy must be determined after examining all the facts and circumstances in a particular case. *People v. Shorty,* 731 P.2d 679 (Colo.1987).

Further, under the Fourth Amendment, a warrantless search of a person's home is presumptively unreasonable. *Petersen v. People,* 939 P.2d 824 (Colo.1997).

When reviewing a trial court's suppression ruling, we must determine whether the trial court's factual findings are adequately supported by competent evidence in the record. If they are, we will not disturb them. *People v. Gennings,* 808 P.2d 839 (Colo.1991); *People v. Graham,* 53 P.3d 658 (Colo.App.2001). We must also determine whether the trial court applied the proper legal standard to the facts of the case. *People v. Jordan,* 891 P.2d 1010 (Colo.1995); *People v. Graham, supra.* A trial court's legal conclusions are subject to de novo review. *People v. Romero,* 953 P.2d 550, 553 (Colo.1998).

## A. Tennis Shoes Seized at the Girlfriend's House

We reject defendant's various arguments that his tennis shoes should have been suppressed.

### 1. Common Authority

Defendant first contends that because he was a licensed guest at his girlfriend's home, she did not have common authority to consent to the police seizure of his tennis shoes. However, we conclude, as discussed below, that the girlfriend had common authority to invite police into her bedroom and that the plain view doctrine justified the police seizure of his tennis shoes.

The prohibition against warrantless searches does not apply when voluntary consent has been obtained, either from the indi-

vidual whose property is searched or from a third party who possesses common authority over the property. *People v. Breidenbach,* 875 P.2d 879 (Colo.1994).

■ A third party does not have authority to consent to a search simply by virtue of ownership of the property. Rather, the third-party's authority rests on mutual use of the property by persons generally having joint access or control for most purposes. *People v. Breidenbach, supra.*

■ To establish common authority, the evidence must show such mutual use, that it is reasonable to recognize that any of the cohabitants has the right to permit inspection and that the others have assumed the risk that one of them might permit the area to be searched. *People v. Kellum,* 907 P.2d 712 (Colo.App.1995).

Here, the trial court found that the girl-friend rented the house and paid the bills and that defendant stayed there frequently and kept some clothes there. The court concluded that she had control over and access to the entire home.

Further, the trial court found that although the police had the girlfriend's house under surveillance because the police dogs had tracked a scent to her house, the police had initially contacted the girlfriend because she reported that her car had been stolen. She subsequently invited the police into her house, where she discussed her relationship with defendant and the murder at issue here. While they were in her home, the police and the girlfriend began talking about her hand-crafted furniture in the living room. The girlfriend indicated that she had more furniture in her bedroom and asked the police if they wanted to see it. A police officer followed her into the bedroom and, as he entered the bedroom, he saw a pair of tennis shoes on the floor near the doorway with one shoe lying on its side. The officer noticed that the shoes appeared to have blood on them. This officer had seen the shoeprints on the floor of the victim's house. He noticed that the soles of the tennis shoes matched those shoeprints. The girlfriend told police that the shoes belonged to defendant. She then she signed a consent to

search form, and subsequently, the police seized the tennis shoes, other clothing, and packets of food.

Defendant argues that although the girl-friend had authority to consent to a search of the premises, she could not authorize a seizure of his tennis shoes. However, based on our review of the record, we conclude that the girlfriend had common authority to invite police into her home and into her bedroom, where, under the plain view doctrine, the police legally seized his tennis shoes. The fact that she consented to the seizure of his tennis shoes is irrelevant.

### 2. Plain View

Defendant contends that because police lacked probable cause to believe that the tennis shoes contained any material evidence of a crime, the trial court erred when it determined that the plain view exception to the warrant requirement applied to the shoes. We disagree.

■ The "plain view" doctrine is another well-established exception to the warrant requirement. The plain view doctrine justifies the warrantless seizure of evidence when an object in plain view possesses a readily apparent incriminating character. *People v. Kluhsman,* 980 P.2d 529 (Colo.1999).

■ Police may seize evidence in plain view if: (1) the initial police intrusion onto the premises was legitimate; (2) the police had a reasonable belief that the evidence seized was incriminating; and (3) the police had a lawful right of access to the object. *People v. Kluhsman, supra,* 980 P.2d at 534.

■ The trial court's findings discussed above are supported by the record, and thus the trial court properly concluded that the shoes were subject to the plain view exception to the warrant requirement. The officer observed the tennis shoes as a result of a lawful entry into the girlfriend's bedroom— he was invited in—and the incriminating character of the tennis shoes was immediately apparent.

Further, we disagree with defendant's contention that the Supreme Court's decision in *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct.

1149, 94 L.Ed.2d 347 (1987) requires a contrary result. In *Hicks*, the Supreme Court determined that a police officer's act of moving stereo equipment to reveal serial numbers did not fall within the plain view exception to the warrant requirement. Here, in contrast, the police officer did not pick up or move the tennis shoes before he noticed their incriminating character.

### 3. License

■ To the extent that defendant argues that because he had an unrevoked license to enter and use his girlfriend's home, she did not have common authority to consent to a search and seizure of his belongings, we note that defendant did not make this argument before the trial court. Therefore, we will not address it for the first time on appeal. *See People v. Jansen,* 713 P.2d 907, 914 n. 8 (Colo.1986); *People v. Young,* 987 P.2d 889 (Colo.App.1999).

### 4. Opportunity to Exercise Fourth Amendment Rights

Again in the alternative, defendant contends that his girlfriend's consent was ineffective because it was obtained only after the police had denied him the opportunity to exercise his own Fourth Amendment rights by asking him to return to his father's house before they obtained his girlfriend's consent to search her house. However, defendant did not raise this issue before the trial court. Therefore, we will not address it on appeal. *See People v. Jansen, supra.*

### B. Police Entry of Porch

Defendant next contends that the police may not enter the curtilage of a home at 1:30 a.m. without a warrant, and therefore, the trial court erred when it denied his motion to suppress the statements made and evidence seized at his father's home. We disagree.

■ The area immediately surrounding a private residence, the curtilage, is protected in some cases under the Fourth Amendment. The fact that a search occurs within the curtilage is not dispositive if the area's public accessibility dispels any reasonable expectation of privacy. For example, in

conducting a criminal investigation, a police officer may enter those residential areas that are expressly or impliedly held open to casual visitors. *People v. Shorty, supra,* 731 P.2d at 682.

■ Further, law enforcement officers may constitutionally knock on the door of a residence and seek permission to enter to conduct a search of that residence. *People v. Baker,* 813 P.2d 331 (Colo.1991).

■ Here, the trial court found that on the morning after the murder, at 1:30 a.m., the police entered the porch of the father's house and knocked on the sliding glass door, as they had done when contacting the father on prior occasions. Further, the court found that the porch door was not always closed and that the residents of the house might not know if a visitor was present unless he or she knocked on the sliding glass door inside the porch. It concluded that, under these circumstances, it was reasonable for the police to enter the porch to contact the residents.

We conclude that the trial court's findings are supported by the record. Thus, the trial court properly denied defendant's motion to suppress based upon the porch entry.

### C. Entry into the Father's Home

Defendant contends that the trial court erred when it denied his motion to suppress the statements made and evidence seized at his father's home because the encounter was not consensual and no exigent circumstances existed. We disagree.

### 1. Common Authority

■ Defendant contends that the family friend lacked common authority to consent to the police entry of his father's home. We agree, but nonetheless conclude that the trial court reached the correct result. *See People v. Young,* 987 P.2d 889 (Colo.App.1999)(approving suppression ruling on grounds different from those relied on by the trial court).

We note that no Colorado appellate court has addressed the issue, but courts in at least two other jurisdictions have endorsed the view that where a guest is actually present inside a residence when the consent is given,

and such consent is merely to a police entry into an area where a visitor would normally be received, such consent is authorized. *See Nix v. State*, 621 P.2d 1347, 1350 (Alaska 1981)(holding that house guest who occasionally spent the night had apparent authority to allow officer to enter the premises, noting "[i]t would be extraordinary if any house guest lacked such authority"); *People v. Shaffer*, 111 Ill.App.3d 1054, 67 Ill.Dec. 612, 444 N.E.2d 1096 (1982)(defendant's brother who was frequent visitor to premises, had actual authority to permit police to enter an area where a visitor would normally be received).

These cases rely on two different theories: apparent authority and actual authority based on a sufficient relationship to the premises searched. We conclude that under either theory, the result here is the same.

 The doctrine of apparent authority is well established in Colorado. Apparent authority is not authority at all, but merely the appearance of authority. A search justified by the apparent authority doctrine is not authorized by consent from one with authority to give it. Instead, such a search, without valid consent, does not violate the Fourth Amendment because it is not unreasonable. The doctrine is premised on the points that whether a third party has consented is a question of fact and that mistakes of fact by the police can be reasonable under certain circumstances. *Petersen v. People, supra*.

 Further, the doctrine of apparent authority is related to the Fourth Amendment exclusionary rule, which is intended to deter police from unreasonable searches and seizures. The rule can have no deterrent effect where the police believe that they are acting reasonably and lawfully and only in hindsight is actual authority found to be wanting. *Nix v. State, supra*, 621 P.2d at 1350.

In contrast, applying the theory of actual authority, the court in *Shaffer* concluded that the defendant's brother had a sufficient relationship with the premises to allow the police to enter. The court noted that the brother was not a casual visitor, had never been prevented from inviting friends into defendant's house, and had invited police into an area where guests would normally be received. Accordingly, the court concluded that the brother had actual authority to permit police entry and that the ensuing search was not unreasonable. *People v. Shaffer, supra*, 67 Ill.Dec. 612, 444 N.E.2d at 1099.

Finally, both courts quoted a well-known criminal law treatise:

Note must be taken of a case ... where the guest is actually present inside the premises at the time of the giving of the consent and the consent is merely to a police entry of the premises into an area where a visitor would normally be received. There is sound authority that, at least when the guest is more than a casual visitor and "had the run of the house," his lesser interest in the premises is sufficient to render that limited consent effective. It may also be suggested that the apparent authority doctrine may come into play in these circumstances, so that the police are entitled to assume without specific inquiry as to that person's status that one who answers their knock on the door has the authority to let them enter.

*Nix v. State, supra*, 621 P.2d at 1350 (quoting 2 W. LaFave, *Search and Seizure* § 8.5(e), at 759 (1978)); *People v. Shaffer, supra*, 67 Ill.Dec. 612, 444 N.E.2d at 1099 (same).

Here, the trial court found that the family friend, an overnight guest, answered the door after the police knocked and invited the officers inside the house. The officers then waited in the living room area while the family friend went to the back of the house to find defendant and his father.

We conclude that under these circumstances, the family friend had authority to consent to the police officers' entry into that area. Further, we conclude that it was reasonable for the police to believe that they had authority to enter based on the family friend's invitation. In reaching this conclusion, we do not address whether the family friend could have consented to a search of the entry area because this issue is not before us.

## 2. Show of Force

Defendant also contends that the family friend was unable to consent because the police gained entry by a show of force. However, defendant did not raise this issue before the trial court. Accordingly, we decline to address it. *See People v. Jansen, supra.*

## 3. Entry Based on Pretext

Finally, defendant contends that the police officers misrepresented their reason for entering his father's house and therefore the entry was not consensual. Specifically, defendant argues that the police entered to arrest him, not to question him. Because defendant raises this issue for the first time on appeal, we will not address it. *See People v. Jansen, supra.*

## D. Father's Conflict of Interest

Finally, defendant contends that his father was unable to assist him, as a juvenile, in the exercise his Fifth Amendment rights because his father had a conflict of interest. He argues that therefore his statements were not admissible. We disagree.

Section 19-2-511(1), C.R.S.2001, provides:

No statements or admissions of a juvenile, made as a result of [a] custodial interrogation ... shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his or her parent, guardian, or legal or physical custodian were advised of the juvenile's [constitutional rights].

■ Generally, an adult must be present at the interrogation of any juvenile to assure that the juvenile's Fifth Amendment right against self-incrimination will be fully afforded to him or her.

However, if the adult appearing with the juvenile has interests hostile to those of the child, the juvenile is impermissibly deprived of the protection contemplated by the statute. *People v. Legler*, 969 P.2d 691 (Colo. 1998).

■ To provide the effective guidance and advice contemplated by the statute, a parent must be in a position to give advice freely. *People in Interest of L.B.*, 33 Colo. App. 1, 513 P.2d 1069 (Colo.App.1973)(addressing previous but similar version of statute).

In *L.B.* and *Legler* the adult may have had interests hostile to those of the juvenile or may not have been able to give advice freely. In *L.B.*, a division of this court concluded that an incarcerated parent is in no position to provide parental guidance or assistance. *People in Interest of L.B.*, *supra*, 33 Colo. App. at 2, 513 P.2d at 1070. In *Legler*, the court determined that the defendant's grandmother had interests hostile to her grandson after she repeatedly told police that she did not care what happened to him and that she wanted him "put away." *People v. Legler*, *supra*, 969 P.2d at 696; *see also People in Interest of P.L.V.*, 176 Colo. 342, 490 P.2d 685 (1971)(excluding statement taken in parents' presence where they suspected son of burglarizing their home); *cf. People v. Hayhurst*, 194 Colo. 292, 571 P.2d 721 (1977)(that the father was upset with his son's possible involvement in a crime did not mean that their interests were necessarily adverse).

■ Here, defendant contends that his father was unable to perform his duties under the statute because he was the subject of an ongoing police investigation involving stolen weapons. Defendant argues that because his father was a convicted felon with possible criminal charges pending, his interests were adverse to those of defendant. However, we cannot conclude that the father's interests were hostile to defendant's interests based on the mere fact that defendant's father was under investigation for possession of a stolen weapon. Nothing in the record demonstrates that defendant's father could not advise or assist defendant in any way or that he was motivated to assist the police, rather than his son, because of the pending investigation.

Further, we cannot conclude, without more, that his interests were hostile to those of his son, even though the police had visited the father's house the day before the interrogation to ask about the stolen weapon, and

the father testified that he assisted the police in finding the weapon "to keep my butt out of trouble" and that if he did not help "they would be back with more than I wanted."

Finally, our review of the record reflects that the father advised defendant and even offered explanations to police concerning defendant's actions and whereabouts on the day of the murder.

In these circumstances, we decline to create a per se rule that a pending criminal investigation of a parent renders his or her interests, assistance hostile or adverse to a child for purposes of § 19-2-511(1). Thus, the trial court did not err when it denied defendant's motion to suppress on this basis.

## III. Discovery

■ Defendant contends that the trial court violated his constitutional right to due process when it denied his discovery requests for access to police reports for all recent burglaries in Boone, Colorado, the location of the murder. We disagree.

Crim. P. 16(I)(a)(2) provides that "[t]he prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor."

This rule is grounded in the due process requirements identified by the United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *People v. Dist. Court,* 790 P.2d 332, 337 (Colo.1990).

■ To qualify for disclosure under Crim. P. 16(I)(a)(2), the exculpatory evidence must be material as measured by the following standard: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Wilson,* 841 P.2d 337, 339 (Colo.App.1992).

■ Further, the regulation of discovery matters lies within the sound discretion of the trial court. *People v. Dill,* 904 P.2d 1367 (Colo.App.1995), *aff'd,* 927 P.2d 1315 (Colo. 1996).

Here, defendant filed two discovery motions requesting that the prosecution provide him with information concerning investigations of all incidents of burglary or trespass in the area of Boone within the past two years. As grounds, defendant argued that evidence of burglaries committed by other people was exculpatory.

The trial court, after conducting a hearing, partially granted defendant's request. However, the trial court concluded that defendant had not shown how the requested reports were material or exculpatory. Therefore, it denied his request for burglary information, except for those instances in which defendant or another identified suspect was involved.

■ We find no abuse of discretion in the court's ruling. Our review of the record shows that defendant did not establish that his broad discovery request actually sought exculpatory materials.

Defendant further argues that the trial court relied on the wrong provision of Crim. P. 16 when it denied his discovery request. Specifically, he asserts that the trial court should have granted his motion as a discretionary request under Crim. P. 16(I)(d). We disagree.

Crim. P. 16(I)(d)(1) provides that "[t]he court in its discretion may, upon motion, require disclosure to defense counsel of relevant material and information not covered by [the mandatory disclosure rules], upon a showing by the defense that the request is reasonable."

Initially, we note that this argument was not made by defendant in his two discovery motions or at the hearing, it was not addressed or considered by the trial court, and it was not mentioned in the trial court's order denying defendant's motion.

Further, the trial court partially granted defendant's motion, and on appeal defendant has not demonstrated how the additional burglary information would have affected the outcome of the trial. Therefore, after reviewing the entire record, we can say with

fair assurance that any discovery error did not so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of his judgment of conviction. *See Wilson v. People,* 743 P.2d 415 (Colo.1987)(articulating standard for plain error review).

### IV. Jurors' Question During Deliberations

Defendant next contends that the trial court violated his constitutional rights to trial by jury and due process when it responded to a note from the jurors. We disagree.

■ Where a defendant actively participates in the preparation of a response to the jury, or expressly agrees to it, he or she is prevented from asserting error with respect to the response. *People v. Bielecki,* 964 P.2d 598, 608 (Colo.App.1998).

Here, during deliberations, the jurors delivered a note to the court that read: "Need explanation of the charges and counts." The trial court conferred with counsel about a response to this question and asked the parties if referring the jurors to Instruction No. 13, which described charges, counts, and offenses, was adequate. Defendant's counsel stated that although he was confused by the jurors' question, the court's proposed answer might prompt a more specific question. The trial court concluded that unless counsel had another suggestion, it would refer the jurors to Instruction No. 13. Ultimately, defendant's counsel stated that he had no objection to the proposed response.

■ Thus, defense counsel actively participated in preparing the response to the jurors' question and defendant cannot now complain that the response was improper.

### V. Jury Verdict Form

Defendant contends that the trial court violated his constitutional right to trial by jury because it refused to instruct the jurors to choose between different theories of murder. We are not persuaded.

■ Under the doctrine of invited error, a party may not complain on appeal of an error that he or she has invited or injected into the case; a party must abide the consequences of his or her acts. *People v. Zapata,* 779 P.2d 1307 (Colo.1989); *People v. Gregor,* 26 P.3d 530 (Colo.App.2000).

■ In accordance with defendant's express request, the trial court submitted two jury verdict forms to the jurors, which allowed them to convict defendant of both first degree murder (felony murder) and second degree murder. Further, during the jury instruction conference, defendant's counsel expressly objected to the prosecution's proposed instruction requiring the jury to choose between the different theories of murder. The trial court rejected the proposed instruction based on defendant's objection, but defendant now argues it should have been submitted to the jury.

Thus, defendant's affirmative request and objection led to the error here. Accordingly, defendant is precluded from challenging the instructions now.

### VI. Felony Murder Conviction

■ Defendant next contends that his acquittal on the charge of first degree murder (after deliberation) is legally inconsistent with his conviction of felony murder. Specifically, he argues that the acquittal is inconsistent with the doctrine of supplied deliberation on which the charge of felony murder is based. We disagree and conclude that defendant misapprehends the intent element of felony murder.

■ If the existence of an element of one crime negates the existence of a necessary element of another crime, guilty verdicts on both are legally and logically inconsistent and may not be sustained. *People v. Frye,* 898 P.2d 559 (Colo.1995); *People v. Ramirez,* 18 P.3d 822 (Colo.App.2000).

■ However, a defendant may be convicted of felony murder where the only showing of mental culpability is that for the underlying general intent felony. *People v. Hickam,* 684 P.2d 228, 232 (Colo.1984). In *Hickam,* the court expressly rejected the defendant's argument that because felony murder is classified as first degree murder, the prosecution must be required to prove that he had the specific intent to kill. Rath-

er, the element of causing a death during the commission of a felony supplies the mental culpability element required for first degree murder. *People v. Hickam, supra.* There is no requirement that the prosecution prove any specific intent to kill, whether after deliberation or not.

Therefore, defendant's acquittal of first degree murder (after deliberation) is not relevant to the intent element of felony murder, which is supplied by his intent to commit second degree burglary. Thus, the verdicts are not inconsistent.

## VII. Second Degree Murder and Second Degree Burglary Convictions

■ However, we agree with the People that defendant cannot be convicted of felony murder and second degree murder for the same killing.

■ Only one conviction of murder is permitted for the killing of one victim. *People v. Lowe,* 660 P.2d 1261 (Colo.1983), *overruled in part by Callis v. People,* 692 P.2d 1045 (Colo.1984). Therefore, here, only one conviction may enter for the homicide. *See also People v. Hickam, supra* (defendant cannot be convicted of felony murder and second degree murder for one killing).

■ In deciding which of two convictions to retain under these circumstances, a court should enter as many convictions and impose as many sentences as are legally possible so as to effectuate fully the jury's verdict. *People v. Glover,* 893 P.2d 1311 (Colo.1995).

Here, because felony murder produces the longest sentence and results in a conviction of the felony of the higher class, we conclude that it maximizes the effect of the jury's verdict. Accordingly, defendant's conviction for second degree murder must be vacated.

■ Further, we agree with the People that defendant may not be convicted of both felony murder and second degree burglary because the burglary offense, as the predicate felony, is a lesser included offense of felony murder. *See People v. Lucas,* 992 P.2d 619 (Colo.App.1999)(noting when felony murder is predicated upon defendant's killing of a robbery victim, a simultaneous convic-

tion for robbery is precluded). Thus, his conviction for second degree burglary also must be vacated.

On remand, the trial court is instructed to correct the mittimus to reflect only a conviction of felony murder.

The judgment is vacated as to the convictions for second degree murder and second degree burglary, and the case is remanded for correction of the mittimus in accordance with this opinion. In all other respects, the judgment is affirmed.

Judge PLANK and Judge DAILEY concur.