JUSTICE MÁRQUEZ
delivered the Opinion of the Court.
¶ 1 In 2011, a jury convicted Susan Stock of third degree burglary and theft for stealing money from vending machines at the hotel where she worked. The court of appeals reversed Stock’s convictions, concluding that the trial court erroneously denied Stock’s motion to suppress statements she made to a police officer who had entered the hotel room where she lived. Stock’s father, who was Stock’s invited guest in the room, had opened the door on Stock’s behalf in response to the officer’s knock, and moved aside to allow the officer to step a few feet inside the hotel-room door. The officer then requested and obtained Stock’s express permission to come further into the room to speak with her. The court of appeals reasoned that the police officer’s entry into the hotel room was unlawful because Stock’s father lacked authority ,to consent to the officer’s entry into the hotel room. In reviewing the court of appeals’ decision, we are therefore asked to decide whether the officer’s entry into Stock’s hotel room violated her Fourth Amendment right to be free from unreasonable searches. Importantly, this case does’ not require us to decide whether Stock’s father had authority to consent to a full-blown search of the room; rather, the narrow question before us is whether Stock’s father could consent to the officer’s limited entry a few feet inside the door.
¶2 On the-facts of this case, we conclude that Stock conferred authority on her father to consent to the officer’s limited entry. The trial court therefore properly denied Stock’s motion to suppress, and her statements to the officer were admissible at trial. Accordingly, we reverse the judgment of the court of appeals and remand the case.for further proceedings consistent with this opinion.
I. Facts and Procedural History
¶ 3 -The following facts . are drawn from witness testimony and the trial court’s findings of fact at Stock’s suppression hearing on January 14,2011.
¶4 Susan Stock worked as a front-desk clerk at a Best Western hotel in Winter Park, Colorado. Stock lived in a room at the hotel. In May 2010, the hotel manager discovered that she was missing a key to one of the hotel vending machines and that money had been emptied from the machine. Suspicious that an employee had taken the money, the manager reported the theft to a detective with the Fraser-Winter Park Police Department. ‘The detective visited the hotel and made appointments to interview four hotel employees, one of whom was Stock. On May 18, the detective interviewed Stock in the hotel’s front lobby. During that interview, Stock denied taking the key and’money.
¶ 5 Two days later, on May 20, Stock reversed course and confessed to the hotel’s owner that she had stolen money from the hotel’s vending machines. The hotel manager called the police department, reported that one of the employees had confessed, and asked for an officer to respond. A uniformed police officer went to the hotel and spoke to the owner. The hotel.owner related to the officer that Stock had confessed and was presently in her hotel room. The hotel owner provided the officer with directions and the room number.
¶ 6 The officer went to Stock’s hotel room and knocked on the door. Stock’s father, whom the officer knew was not a resident of the hotel room, answered the door. The father opened the door and stepped back into the hotel room, allowing the officer to step inwards. The officer understood the father’s action to be an invitation to enter the room. Stock’s hotel room was a typical single-room unit with a small entryway, a bathroom on the right side, a bed, and some furniture. The officer took a couple of steps -past the hotel-room door and introduced himself. Stock’s father asked the officer whether he should remain,in the room. The officer asked the father to leave, and the father stepped outside into, the hallway, As the .father was leaving, the officer saw Stock, who had been *389 on -the bed crying when her father opened the door.
¶ 7 The officer asked Stock if he could speak with her, and Stock responded, “Yes.” Stock then cleared off a seat in. her room for the officer and offered it to him. The officer took the seat and had a thirty-minute conversation with Stock, during which she admitted to taking money from the hotel’s vending machines. Stock also produced -the vending-machine key and gave it to the officer.
¶ 8 The People charged Stock with third degree burglary in violation of section 18-4-204(1), C.R.S. (2016), and theft of cash with a value of $1,000 or more, but less than $20,000, in violation of section 18-4-401(2)(c), C.R.S. (2009). Stock moved to suppress her statements to the officer and the evidence obtained as a result of the officer’s entry, arguing that the officer’s entry into the room was illegal and that the officer’s questioning constituted a custodial interrogation necessitating Miranda warnings. The court held a hearing on the motion, and the parties presented testimony from Stock, her father, the officer, and the detective who had initially interviewed Stock on May 18. Stock testified at the héaring that she did “not really” want the officer to enter her room. However, the trial court found that aspects of Stock’s testimony were contradictory, and that Stock’s credibility was impaired by her prior felony conviction and her self-interest in having the suppression motion granted.
¶ 9 The court issued a bench ruling denying the motion to suppress, but later expressed'-concern as to whether it had correctly concluded that the officer’s entry into the hotel room was lawful. The court therefore invited the parties to submit written briefing on the issue. The court then issued a written order reaffirming its earlier ruling denying the motion to suppress. The court’s written order relied principally on People v. White, 64 P.3d 864, 872 (Colo. App. 2002), in which the court of appeals concluded that a family friend visiting the defendant’s father as an overnight houseguest had authority to consent to a police entry into an area of the father’s house where a visitor normally would be received. In this case, the trial court reasoned that the officer’s entry into Stock’s hotel room was analogous to the lawful police entry in White because Stock’s father was a close relative, not a casual visitor, and because he had merely allowed -the officer to step into the entry area to the hotel room where guests normally would be received. The trial court therefore concluded that Stock’s father had authority to let the officer into the entry area of the hotel room. The trial court also reasoned that Stock’s father “opened the door for his daughter because she was on the bed crying” when the officer knocked. Finally, the court found from the evidence at the .motions hearing that Stock and her father were waiting for law enforcement; the court noted that neither of them acted surprised or.asked the officer why he had come -to Stock’s room. Accordingly, the trial court again concluded- that the officer’s entry into the -hotel room was lawful and denied the motion to suppress.
¶ 10 Stock’s three-day jury trial took place in March 2011. The officer testified about Stock’s confession in her hotél room on May 20. Stock testified in her own defense. She admitted taking money from the vending machines but claimed that she intended to return the money once she received a commission that she expected for ski-rental customer referrals. The jury convicted Stock of both counts.
¶ 11 On appeal, Stock again argued that her statements should have been suppressed because the officer’s entry into her hotel room was unlawful. In ah unpublished decision, a panel of the court of appeals agreed. People v. Stock, No. 11CA1271, slip op. at 7-9, 2014 WL 4467735 (Colo. App. Sept. 11, 2014) (not published pursuant to C.A.R. 35(f)). The court of appeals concluded- that the trial court had erred in -relying on White because, in its- view, White “does- not stand for the legal proposition that any visitor who is more than a casual visitor has the authority to allow law enforcement officers into another person’s home without that person’s consent.” Id. at 7. Instead, the court of appeals concluded that the father lacked authority to consent to the officer’s entry because the father did not live in the hotel room. Id. at 7-8. And because the officer knew the father did not reside there, the *390 court of appeals further concluded that the officer could not have formed a reasonable (albeit mistaken) belief that the father possessed common authority over the room. Id. at 8. The court of appeals therefore reversed Stock’s judgment of conviction and remanded the case for a new trial. Id at 14.
¶ 12 We granted the People’s petition for writ of certiorari to review the court of appeals’ ruling.[1]
II. Analysis
A. Standard of Review
¶ 13 Review of a trial court’s suppression order presents a mixed question of law and fact. People v. Simpson, 2017 CO 25, ¶ 12, 392 P.3d 1207, 1210. In reviewing a trial court’s suppression ruling, we defer to the trial court’s findings of historical fact that are supported by competent evidence in the record, but we assess the legal effect of those historical facts de novo. Id. We may affirm a trial court’s suppression ruling on any grounds supported by the record. Moody v. People, 159 P.3d 611, 615 (Colo. 2007) (“[A]p-pellate courts have the discretion to affirm decisions, particularly denial of suppression motions, on any basis for which there is a record sufficient to permit conclusions of law, even though they may be on grounds other than those relied upon by the trial court.”).
B. Fourth Amendment Principles
¶ 14 The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. Const, amend. IV. A parallel provision of the Colorado Constitution likewise protects against unreasonable searches and seizures and is generally coextensive with the Fourth Amendment. Colo. Const, art. II, § 7; Simpson, ¶ 16, 392 P.3d at 1211.
¶ 15 The Fourth Amendment does not proscribe all government searches; rather, it proscribes only those that are unreasonable. Florida v. Jimeno, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). A warrantless entry into a person’s home is presumptively unreasonable unless it falls within a recognized exception to the Fourth Amendment’s warrant requirement. See People v. Taube, 864 P.2d 123, 129 (Colo. 1993).
¶ 16 One such recognized exception is the voluntary consent of a person authorized to grant such consent. United States v. Matlock, 415 U.S. 164, 170-71, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The Supreme Court has long approved of consensual searches “because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.” Jimeno, 500 U.S. at 250-51, 111 S.Ct. 1801. Where a third party (rather than the subject of the search) communicates consent, the search is invalid unless the third party has the authority to consent to the particular search at issue. Stoner v. California, 376 U.S. 483, 487-90, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). A third party’s authority to consent to a search of a premises typically stems from the third party’s “common authority” over the premises, arising from “mutual use of the property by persons generally having joint access or control for most purposes.” [2] Matlock, 415 U.S. at 171 n.7, 94 S.Ct. 988; People v. Strimple, 2012 CO 1, ¶ 21 n.7, 267 P.3d 1219, 1224 n.7. However, both the Supreme Court and this court have, also recognized a third party’s authority to consent to a search where the subject of the search has conferred authority to consent to the third party. See Stoner, 376 U.S. at 487-89, 84 S.Ct. 889 (discussing *391 whether police had a basis to believe that the defendant had authorized a hotel night clerk to permit police to search the defendant’s room); Petersen v. People, 939 P.2d 824, 829 (Colo. 1997) (discussing “authority conferred to an agent by express or implied delegation”).
¶ 17 In the context of any third-party consent — as in all Fourth Amendment inquiries — the touchstone for determining the constitutionality of the search is reasonableness, Jimeno, 500 U.S. at 250, 111 S.Ct. 1801, and “[w]hat is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself,” United States v. Montoya de Hernandez, 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). Of “great significance” in assessing the Fourth Amendment reasonableness of a search based on third-party consent are our culture’s “widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules.” Georgia v. Randolph, 547 U.S. 103, 111, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006); see also Rakas v. Illinois, 439 U.S. 128, 143 n.12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (subject’s reasonable expectation of privacy depends in part on “understandings that are recognized and permitted by society”); Minnesota v. Olson, 495 U.S. 91, 99-100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (same).
¶ 18 Regardless of social expectations, however, the consent given must be voluntary, as “determined from the totality of all the circumstances.” Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Consent to a search need not be express, but may be implied from the context and circumstances. See Birchfield v. North Dakota, — U.S. -, 136 S.Ct. 2160, 2185, 195 L.Ed.2d 560 (2016) (“[Consent to a search need not be express but may be fairly inferred from context....” (citing Florida v. Jardines, 569 U.S. 1, 133 S.Ct. 1409, 1415-16, 185 L.Ed.2d 495 (2013), and Marshall v. Barlow’s, Inc., 436 U.S. 307, 313, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978))); People v. Hyde, 2017 CO 24, ¶ 21, 393 P.3d 962, 967. In addition, the scope of consent given is limited to “that of ‘objective’ reasonableness” — that is, what “the typical reasonable person [would] have understood by the exchange [with] the officer” about the nature and extent of the search that was authorized. Jimeno, 500 U.S. at 251, 111 S.Ct. 1801.
C. Application
¶ 19 Given the Fourth Amendment’s defining emphasis on reasonableness and the “great significance” given to “widely shared social expectations,” Randolph, 547 U.S. at 111, 126 S.Ct. 1515, we conclude that the officer’s limited entry into Stock’s hotel room, in her immediate presence and without her objection, did not violate Stock’s Fourth Amendment right to be free from unreasonable searches. As previously noted, we need not decide whether Stock’s father had authority to consent to a search of the entire room; instead, the narrow question before us is whether Stock’s father could consent to the officer’s limited entry a few steps inside the door.
¶ 20 On the facts of this case, we conclude that Stock conferred on her father the authority to consent to the officer’s limited entry. The third party who allowed the officer to enter the room was an adult family member and Stock’s invited guest. He answered the hotel-room door and stepped aside to allow the officer to step inside, and did so in Stock’s immediate presence and with her knowledge. Stock did not object in any way to her father’s actions; to the contrary, the events immediately after the officer’s entry confirm that Stock had in fact conferred to her father the authority to consent to the officer’s limited entry.
¶21 First, after the officer stepped into the room, the father asked whether he should stay, indicating both that the officer’s arrival was expected, and that the father had permitted the officer to enter for the purpose of speaking with Stock, who was present in the room just a few feet away. Next, Stock expressly agreed to talk with the officer and proceeded to clear a seat for him in the room. These actions are inconsistent with Stock’s present contention that she did not consent to the officer’s entry; to the contrary, they further confirm that she had, in fact, given her father authority to permit the *392 officer to enter the hotel room to speak with her. Although Stock testified at the suppression hearing that she did “not really” want the officer to enter the room and speak to her, the trial court did not credit that testimony, instead finding that aspects of Stock’s testimony were contradictory and that her credibility was affected by her prior felony conviction and her self-interest in having the suppression motion granted.
¶22 Further, the trial court’s conclusion that the father’s gestures constituted an expression of consent to enter is supported by substantial evidence. The trial court found that the father “welcomed [the officer] into the room by opening the door fully for him and stepping back.” On this issue, the officer testified that the father stepped back from the door, and the trial court specifically found that the officer’s account of the entry was credible, ;
- '.¶ 23 From the officer’s side of the interaction, the opening door revealed an adult whom the officer knew was a close relative of Stock’s. And although the officer knew, the father was not staying in that room, the prevailing social expectation is-that visitors can rely on invitations to enter given by adult' guests of a dwelling because one generally does not answer a door if one has not been authorized by the resident to either admit or turn away visitors. See, e.g., People v. Ledesma, 39 Cal.4th 641, 47 Cal.Rptr.3d 326, 140 P.3d 657, 705 (2006) (“[T]he police may assume, without further inquiry, that a person who answers the door in response to their knock has the authority to let them enter.”). That is, there is a common social expectation that houseguests will confer with residents before admitting a visitor. Cf. Olson, 496 U.S. at 99,110 S.Ct. 1684 (“[F]ew houseguests will invite others to visit them while they are guests without consulting their hosts....”). Additionally, that the person who answered the door was known to be a close relative of Stock’s further suggests that the two would be in communication, giving Stock the opportunity to express her wishes regarding the admission or refusal of guests.
¶ 24 The officer also knew that Stock was physically present in the room because the hotel owner had told the officer he could find Stock in her room. And because Stock’s hotel room was a typical single-room unit, Stock presumably would have been aware of the officer’s knock, giving her the opportunity to turn away the police officer, had she so wished. Given our “widely shared social expectations,” the immediate physical presence of the resident who is the subject of a search is a particularly significant fact because that individual has a clear opportunity to refuse consent. Fernandez v. California, — U.S. —, 134 S.Ct. 1126, 1133-35, 188 L.Ed.2d 26 (2014); Randolph, 647 U.S. at 113-20, 126 S.Ct. 1515; see also Strimple, ¶¶ 31-39, 267 P.3d at 1225-26. Indeed, under such circumstances, the “inhabitant’s express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant”: the police, may not thereafter conduct a consent search in the inhabitant’s presence. Randolph, 547 U.S. at 122-23, 126 S.Ct. 1515.
¶ 25 Importantly, the nature and scope of the consent given in this case were also limited. See Florida v. Jardines, 569 U.S. 1, 133 S.Ct. 1409, 1416, 185 L.Ed.2d 495 (2013) (“The scope of a 'license — express or implied — is limited not only to a particular area but also to a specific purpose.”). Although the Fourth Amendment “draw[s] a firm line at the entrance to the house,” Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the subject of a consent search is free to modify that firm line by “delimit[ting] as he chooses the scope of the search to which he consents,” Jimeno, 500 U.S. at 252, 111 S.Ct. 1801; see also People v. Arapu, 2012 CO 42, ¶ 16, 283 P.3d 680, 684 (“[C]onsent ... may include express or implied limitations.”).
¶ 26 Here, the father allowed the officer merely to step past the entryway for the limited purpose of speaking to the father and Stock, and. not for the purpose of searching the room for evidence. Had the father suggested that the officer could rifle through Stock’s belongings, it would not have been reasonable for the officer to infer that .the father had authority to consent to such a search without further inquiry. See People v. McKinstrey, 862 P.2d 467, 473 (Colo. 1993) (“[P]olice officers ... should make reason *393 able inquiries when they find themselves in ambiguous circumstances regarding the authority of the third party to consent to the search.”); cf. Randolph, 547 U.S. at 112, 126 S.Ct. 1515 (“ ‘[A] child of eight might well be considered to have the power to consent to the police crossing the threshold into [the entryway]’ ... but no one would reasonably expect such a child to be in a position' to authorize anyone to rummage through his parents’ bedroom.” (quoting 4 Wayne LaFave, Search and Seizure § 8.4(c) (4th ed. 2004))).
¶ 27 In sum, considering the totality of these circumstances, we reach the same conclusion as the trial court: that the father consented to the officer’s limited entry into Stock’s hotel room on her behalf, with Stock’s authorization.
¶ 28 Stock argues that instead of entering into the hotel room upon the father’s gesture of invitation, the officer should have waited outside the threshold to obtain consent directly from Stock herself. However, the Supreme Court has cautioned against treating third-party consent cases as inquiries into alternative measures the police might have taken. Randolph, 547 U.S. at 122, 126 S.Ct. 1515 (reasoning that inviting other cotenants to refuse consent would transform “every [third-party] consent case [into] a test about the adequacy of the police’s efforts to consult with a potential objector”); cf. Illinois v. Lafayette, 462 U.S. 640, 647, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (“The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative ‘less intrusive’ means.”). Similarly here, we need not consider counter-factual scenarios about what the officer might have done, given our conclusion that, on the particular facts of this case, Stock’s father had authority to consent to the officer’s limited entry in her immediate presence.
¶ 29 Finally, because we conclude that the officer’s entry was justified on other grounds, we need not reach the People’s argument that the entry was justified under the court of appeals’ decision in People v. White, 64 P.3d 864 (Colo. App. 2002). In that case, the court of appeals concluded that a family friend visiting the defendant’s father as an overnight houseguest had authority to consent to a police entry into the area of the father’s house where a visitor would normally be received. Id. at 871-72. As we have explained above, the validity of a search depends not on whether a unique third-party consent rule applies to a home’s receiving area; rather, the validity of a search depends on the particular circumstances and nature of the search and consent given.
III. Conclusion
¶ 30 On the facts of this case, we conclude that Stock conferred on her father the authority to consent to the officer’s limited entry into her hotel room, in her immediate presence. The trial court therefore properly denied Stock’s motion to suppress, and her statements to the officer were admissible at trial. Accordingly, we reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.
JUSTICE GABRIEL dissents.

. We granted certiorari to review the following issue:
Whether a police officer’s entry into the defendant's hotel room constituted an unreasonable entry that violated the Fourth Amendment, where the officer was invited by the defendant’s father and the defendant herself consented to the entry.

. Additionally, a defendant's right to be free from unconstitutional searches is not violated when an officer reasonably, but mistakenly, concludes that a third party possesses the requisite "common authority” to consent. Illinois v. Rodriguez, 497 U.S. 177, 181, 187-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); Petersen v. People, 939 P.2d 824, 830 (Colo. 1997). In these circumstances, the consent given is invalid, but there is nevertheless no Fourth Amendment violation because the government’s search based on the appearance of the requisite authority is not unreasonable. Rodriguez, 497 U.S. at 183-84, 110 S.Ct. 2793.