2012 CO 1

**The PEOPLE of the State of Colorado, Plaintiff–Appellant**

v.

**Christopher James STRIMPLE, Defendant–Appellee.**

**No. 11SA217.**

Supreme Court of Colorado, En Banc.

Jan. 17, 2012.

Office of the District Attorney, Seventeenth Judicial District, Don Quick, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

Office of the Colorado, State Public Defender, Douglas K. Wilson, Colorado, State Public Defender, Megan M. Downing, Deputy Public Defender, Brighton, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal under C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2011), the prosecution challenges an order of the Adams County District Court granting in part the defendant's motion to suppress evidence. The order suppressed evidence of a pipe bomb, knives and drug paraphernalia the police discovered in a home after the police confronted the defendant at the home, arrested him and took him to the police station. The victim, who shared the home with the defendant, consented to a search of the home for weapons.

¶ 2 The defendant, Christopher Strimple, threatened police responding to a domestic violence complaint, refused to open the door to the home, and stood the police off during a confrontation while four children were in the house and the victim, Gabriele Thompson, Strimple's common law wife, was outside of the home coordinating with the police. When Strimple eventually surrendered, po-

lice officers entered the home to conduct a protective sweep and locate a firearm Strimple said was in a sofa. Thompson reentered the home with police after Strimple's departure and consented to a search for any other weapons in the home. They found knives, a pipe bomb, and drug paraphernalia in addition to the handgun they had previously found during the initial protective sweep.

¶ 3 The trial court concluded that the initial warrantless protective sweep was reasonable and allowed the handgun in the sofa to be admitted into evidence, but it suppressed all evidence from the follow-up search made at Thompson's request because, during his confrontation with the police, Strimple had refused entry into the home.

¶ 4 We reverse the suppression order. We hold that the second warrantless search for dangerous weapons in the home was reasonable under the consent exception to the Fourth Amendment, despite the prior refusal of defendant to allow the police into their shared home.

I.

¶ 5 On October 25, 2010, City of Westminster police responded to a nighttime call from Thompson about a domestic incident. She reported the disturbance arose during an argument with her "common-law husband," during which he became highly agitated and ordered her out of the couple's shared residence. As she began packing her belongings to leave, Strimple yelled she was not packing her things fast enough, spat on her, picked her up, and tossed her from the house. Four children, Thompson's two daughters and Strimple's two sons, remained in the home.

¶ 6 Concerned for the safety of her two daughters, a four-year-old and an eleven-month-old, Thompson ran back into the home and began packing her daughters' belongings. When Thompson attempted to make a phone call, Strimple entered the bedroom, grabbed her cell phone, threw it to the ground, and stomped on the pieces. Thompson told her four-year-old daughter to stay in the room with the infant and ran to a nearby convenience store to call 911.

¶ 7 A police officer responded to Thompson at the convenience store and heard her account of the incident. She told him that she had lived with Strimple for "a while." She reported her concern for the four children in the home and gave the officer a key to the home and gave oral consent for the police to enter. The officer asked her whether there were any firearms in the residence. She initially said no, but then said "there's a handgun." Thompson drew a map of the residence describing where the children might be located and signed a written form granting permission for the police to enter and search the home.

¶ 8 While Thompson spoke with the officer at the convenience store, three officers arrived at the home and knocked on the door. Yelling over loud music playing inside the house, Strimple ordered the officers off his property, called them several names, and made threats of violence towards them. The officer speaking to Thompson relayed to the officers at the home that Strimple could be armed and dangerous, he had a video surveillance system on the house, and four children were inside. The police retreated to a safe position and attempted to negotiate with Strimple by phone.

¶ 9 Negotiations lasted between thirty and forty-five minutes. Strimple told officers he did not want them inside the house. According to one of the officers, Strimple stated "multiple times that if police were to try to come inside that he would shoot at us ... that he would kill police officers." The negotiating officer assured Strimple that police would not come inside. Officers could hear at least two children crying in the background during the phone conversation, even as Strimple was denying the presence of any children. He finally said one child was present and released Thompson's four-year-old daughter to the police.

¶ 10 The police eventually persuaded Strimple to surrender peacefully and took him into custody. After initially denying that he had a gun in the home, when placed inside a police cruiser he said there was a handgun in a sofa. Police officers rushed in and conducted a protective sweep. They located the three remaining children, Thomp-

son's eleven-month-old daughter and Strimple's two sons, six and seven years of age. They found a handgun under a sofa cushion.

¶ 11 By this time, the police had conveyed Thompson from the convenience store to her home. Strimple's mother arrived on the scene to take care of her grandsons. The police escorted Thompson into her home to be reunited with her eleven-month-old daughter. A victim's advocate arrived to speak with Thompson.

¶ 12 According to one of the officers inside the home, Thompson informed them Strimple had several weapons "secreted throughout the house" she wanted removed. She thought Strimple had a semi-automatic pistol, several large knives in a nightstand, and bullets or ammunition in the couple's bedroom dresser drawer. Police obtained her consent to initiate a renewed search for weapons.

¶ 13 One of the officers located several knives in the nightstand. This officer brought the knives to the kitchen and asked Thompson if there was anything else she wanted the police to look at. She thought there were bullets in the dresser drawer of the couple's bedroom. The officer asked for and received her permission to look in the dresser. In one of the drawers he found marijuana paraphernalia and a gold metal cylinder with a fuse on one end. He picked up the cylinder. When a nearby officer immediately recognized it as a pipe bomb, he put it back down.

¶ 14 The police evacuated the home and called the bomb squad, which identified the cylinder as an improvised explosive device (IED). A bomb squad officer used a small slug to pierce the cylinder and vent the powder inside, ensuring the pipe bomb would not explode. The police preserved remains of the device and photos of it before and after its deactivation. After neutralizing the device, the police searched the rest of the dresser drawers, finding no other weapons.

1. § 18–9–111(1)(a), C.R.S. (2011).

2. § 18–4–501, C.R.S. (2011).

3. § 18–9–306.5, C.R.S. (2011).

¶ 15 The prosecution charged Strimple with harassment,[1] criminal mischief of less than $500,[2] obstruction of telephone use,[3] four counts of child abuse,[4] and possession of an explosive or incendiary device.[5] While in custody, Strimple gave a written statement to police after being advised of his *Miranda* rights. He pled not guilty to all counts; the trial court set a jury trial for August 3, 2011.

¶ 16 Strimple filed a motion to suppress evidence of the weapons discovered in the home, including the handgun, knives, pipe bomb, and drug paraphernalia. He argued refusal of his consent for police to enter and search the home while they were negotiating an end to the standoff. The trial court conducted an evidentiary hearing on May 20, 2011. The court heard testimony from three responding officers and the bomb squad officer who deactivated the pipe bomb.

¶ 17 In its order issued July 14, 2011, the trial court ruled that, although Thompson possessed common authority to validly consent to a search of the shared residence, Strimple's refusal to grant police entry into the home negated Thompson's consent. Invoking *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), the trial court concluded that the initial protective sweep was reasonable to search for victims in the home and locate the handgun in the sofa. However, the court reasoned, after the police safely located the children, Thompson's consent to search for additional weapons did not negate Strimple's earlier refusal to allow police in the home. Saying "[t]here was no longer an emergency circumstance that excepted the police from the warrant requirement of the 4th Amendment," the trial court granted Strimple's motion in part, suppressing evidence of the knives, drug paraphernalia and pipe bomb the police discovered following Thompson's consent to a further protective search. We reverse the suppression order.

4. § 18–6–401(7)(b)(I), C.R.S. (2011).

5. § 18–12–109(6), C.R.S. (2011).

## II.

¶ 18 We hold that the second warrantless search for dangerous weapons in the home was reasonable under the consent exception to the Fourth Amendment, despite the prior refusal of defendant to allow the police into their shared home.

### A. Standard of Review and Applicable Law

¶ 19 We review a trial court's suppression order with deference to the trial court's findings of historical fact and will not overturn them if supported by competent evidence in the record. *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo.2011). However, whether the trial court applied the correct legal standards to the facts is a question of law we review de novo. *Id.*

¶ 20 The United States Constitution and the Colorado Constitution prohibit unreasonable searches and seizures.[6] A search conducted without a valid warrant is presumptively invalid unless justified by one of the few exceptions to the warrant requirement. *People v. Aarness*, 150 P.3d 1271, 1275 (Colo.2006); *People v. Allison*, 86 P.3d 421, 426 (Colo.2004). These exceptions are based on "the ultimate touchstone of the Fourth Amendment," reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). A search conducted pursuant to consent freely and voluntarily given by a person with "common authority" over the premises is one of the exceptions; such a search is objectively reasonable under the Fourth Amendment. *People v. Sanders*, 904 P.2d 1311, 1313 (Colo.

1995); *see United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

¶ 21 In Matlock, the United States Supreme Court established that "consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." 415 U.S. at 170, 94 S.Ct. 988.[7] There, a woman who told police she lived and shared a bedroom with defendant consented to a police search of the bedroom. *Id.* at 166, 94 S.Ct. 988. After searching the bedroom closet, police found and seized cash allegedly taken from a bank by the defendant. *Id.* at 166–67, 94 S.Ct. 988. The Supreme Court held the warrantless search reasonable and valid. *Id.* at 177, 94 S.Ct. 988.

¶ 22 We applied *Matlock* in *Sanders*, where a woman reported her live-in boyfriend had shot at and assaulted her and could be found by police at the couple's shared trailer. 904 P.2d at 1312. She gave police a key to the trailer along with written consent to a complete search of the trailer. *Id.* At the trailer, officers announced their presence and entered after the defendant opened the door. *Id.* at 1312–13. The police arrested him after a scuffle. *Id.* at 1313. Police then conducted a warrantless search of the trailer and seized a rifle and ammunition allegedly used the night of the assault. *Id.*

¶ 23 We reversed the trial court's suppression of items seized in the trailer, stating "[t]he fact that the defendant was present at the time the law enforcement officers searched the trailer does not vitiate the co-occupant's consent." *Id.* We found it irrele-

---

**6.** The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Similarly, the Colorado Constitution provides: The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to

search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Colo. Const. art. II, § 7.

**7.** *Matlock* stated that a third party with "common authority" over the premises—defined as "mutual use of the property by [a] person[ ] generally having joint access or control for most purposes"—can validly grant permission for police to search jointly-used areas within the shared premises. *Id.* at 170, 171 n. 7, 94 S.Ct. 988.

vant that the officers did not seek consent from the defendant and we highlighted that the defendant did not object to the search. *Id.* at 1315.

¶ 24 However, certain language in *Sanders* must now be called into question under *Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). *Randolph* addresses circumstances where two physically present co-tenants disagree on whether police may search the shared premises. The police responded to a domestic disturbance at the request of the wife, who reported her husband was a chronic cocaine user. *Id.* at 107, 126 S.Ct. 1515. The husband arrived at the house and accused his wife of abusing drugs and alcohol. The wife continued asserting her complaints and volunteered to show the officers evidence of drug use in the house. Officers asked the husband for permission to search the house; he refused unequivocally. The officer then asked the wife for consent, which she gave. She led police through the house directly to a drinking straw containing a powdery substance that appeared to be cocaine. *Id.*

¶ 25 The Supreme Court held that "a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." *Id.* at 106, 126 S.Ct. 1515. However, the Court qualified its holding, observing that it was "drawing a fine line" in *Randolph* while maintaining the *Matlock* consent rule. *Id.* at 121, 126 S.Ct. 1515. The *Matlock* defendant was not present to object to the search of the bedroom; the husband in *Randolph* was physically present and objected at the time the wife consented to the search. In the latter situation, "a physically present inhabitant's express refusal of consent" prevails, regardless of the consent of the fellow occupant, and a search in spite of the objection is unreasonable under the Fourth Amendment. *See Randolph,* 547 U.S. at 122, 126 S.Ct. 1515.

¶ 26 Therefore, we now consider abrogated our general language in *Sanders,* 904 P.2d at 1314, 1315, that it is irrelevant whether a physically present co-tenant objects or consents to a search in the face of one co-tenant's consent; such generic language is clearly contrary to *Randolph.*

¶ 27 Nevertheless, the circumstances of a domestic abuse incident can justify a warrantless search for weapons based upon a request of one co-tenant, despite the objection of one or more other co-tenants. The *Randolph* Court clarified two points applicable to the case now before us. First, a co-tenant's consent to a search can prevail over a defendant's refusal to consent when the defendant has left the scene, where there is "no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." *Id.* at 121, 126 S.Ct. 1515. Second, a warrantless search for weapons can be justified under the totality of the circumstances involved in a domestic abuse incident:

> [T]his case has no bearing on the capacity of the police to protect domestic victims.... [T]he question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes.... The undoubted right of the police to enter in order to protect a victim ... has nothing to do with the question in this case, whether a search with the consent of one co-tenant is good against another, standing at the door and expressly refusing consent.

*Id.* at 118–19, 126 S.Ct. 1515 (citations omitted). Both of these clarifications are applicable in this case.

## B. Application to this Case

¶ 28 We conclude that Strimple was no longer "physically present" to object to the search of the bedroom dresser drawers after he left the residence and police took him into custody for transport to the police station. The second warrantless police search at Thompson's request was reasonable under the Fourth Amendment. She possessed common authority, consented to the search and seizure, and there was no evidence the police removed Strimple for the purpose of avoiding a possible objection to the second search. As an additional ground, despite the trial court's ruling that an emergency no longer existed, the totality of the

circumstances in this case demonstrates that the second warrantless search could be upheld based upon exigent circumstances and a reasonable need to protect the safety of the domestic abuse victim and the children remaining in the house.

¶ 29 The trial court misapplied *Randolph* when it ruled that Strimple's refusal to let the police enter the home overrode Thompson's grant of consent to the second warrantless search and seizure. First, the trial court itself found that "young children remained in the home" after Strimple was taken to jail and "if weapons were accessible by them, their safety would be in immediate jeopardy." Moreover, in overruling Strimple's motion to dismiss the pipe bomb charges because of the bomb squad's destruction of the device, the trial court found that the pipe bomb the police located was a "dangerous" device that "would have been unreasonable" to preserve.

¶ 30 In requesting the additional weapons search, Thompson was concerned for her and the children's safety. Under the circumstances of the standoff Strimple waged with the police and her knowledge of his penchant for weapons, the follow-up warrantless search by police was reasonable. The children could have found the knives and/or the pipe bomb and caused injury to each other. Strimple could have been released on bond and come back for retaliation, as Thompson feared.

¶ 31 Thompson had common authority to consent to a search of the home and the police had cause to honor her request to find the rest of the weapons. She gave a house key to the responding officer, drew a map of the inside of the residence, and granted consent to enter the premises for the initial search and the follow-up search. Under *Matlock* and *Sanders,* she had authority to consent to a warrantless search of shared areas of the home, including the bedroom, subject to Strimple's objection if he were present. *See Matlock,* 415 U.S. at 170, 94 S.Ct. 988; *Sanders,* 904 P.2d at 1313. But the police had removed him as a result of the domestic disturbance and his standoff with the officers.

¶ 32 Thompson, the children, and the police officers faced a very agitated man who possessed weapons, had video surveillance of the outside premises, and barricaded himself inside the home with the four children. The police reasonably conducted both warrantless searches with Thompson's consent. Strimple was not physically present during either search. Thus, *Randolph* does not apply to this domestic disturbance incident.

¶ 33 We disagree with the trial court's reasoning that Strimple's "earlier denial of consent" negated Thompson's consent to conduct the follow-up search once Strimple had been removed to the station house. The officers did not remove Strimple "for the sake of" removing his objection to search the house, which *Randolph* forbids.

¶ 34 A Seventh Circuit decision on substantially similar facts is persuasive. In *United States v. Henderson,* 536 F.3d 776, 777 (7th Cir.2008), police responded to a report of domestic abuse. The victim told officers her husband choked her and threw her out of the house. She warned officers he had guns in the house. Officers entered with a key given by the victim's son. *Id.* They encountered the husband, who immediately ordered them to leave. *Id.* at 777–78. They arrested him for domestic battery and removed him from the home. *Id.* at 778. Police obtained consent from the victim to search the home, revealing firearms and drugs. *Id.*

¶ 35 Construing *Randolph* and its requirement that there be no evidence that police removed an objecting co-tenant in order to remove the objection, the Seventh Circuit concluded that the husband's

> objection lost its force when he was validly arrested and taken to jail for domestic battery. At that point [the victim] was free to consent to a search notwithstanding [the defendant's] prior objection; we do not read *Randolph* as permanently disabling [the victim's] shared authority to consent to an evidentiary search of her home.

*Id.* at 777. The court held the search valid as against him and refused to suppress the evidence. *Id.*

¶ 36 The Ninth Circuit reads *Randolph* contrarily to the Seventh Circuit. In *United*

*States v. Murphy,* 516 F.3d 1117, 1119–20 (9th Cir.2008), a police officer observed what appeared to be a methamphetamine lab in the storage unit after a defendant opened the door and menaced the officers with a weapon, was arrested, and then objected to a search of the storage unit. Another co-tenant of the storage unit, denying knowledge of the meth lab, later consented to a search. *Id.* at 1120. Reversing the suppression order of the district court, the Ninth Circuit held that "[o]nce a co-tenant has registered his objection, his refusal to grant consent remains effective barring some objective manifestation that he has changed his position and no longer objects." *Id.* at 1125. The *Henderson* court criticized the *Murphy* holding for extending *Randolph* beyond what the United States Supreme Court intended.

¶ 37 As the *Henderson* court observed, the Justices tailored their decision in *Randolph* as limited to the facts. *See Henderson,* 536 F.3d at 780–82; *see also Randolph,* 547 U.S. at 113, 126 S.Ct. 1515 (noting that the Court had not previously "dealt directly with the reasonableness of police entry in reliance on consent by one occupant subject to *immediate challenge* by another" (emphasis added)); *id.* at 121, 126 S.Ct. 1515 ("[W]e have to admit that we are drawing a fine line. . . . This is the line we draw, and we think the formalism is justified."); *id.* at 126, 126 S.Ct. 1515 (Breyer, J., concurring) ("I stress the totality of the circumstances . . . because, were the circumstances to change significantly, so should the result. The Court's opinion does not apply where the objector is not present and objecting. Moreover, the risk of an ongoing crime or other exigent circumstance can make a critical difference. Consider, for example, instances of domestic abuse. . . . [L]aw enforcement officers must be able to respond effectively when confronted with the possibility of abuse. . . . Given the case-specific nature of the Court's holding, and with these understandings, I join the Court's holding and its opinion." (citations omitted) (internal quotation marks omitted)).

¶ 38 Given the narrowing language of *Randolph,* the *Henderson* court rejected the Ninth Circuit's reading, which allows a one-time objection by a co-tenant to trump any later consent given by another co-tenant, despite the objector's absence from the scene. "[T]he Court's dicta should not be overread to require the invalidation of an otherwise valid third-party consent search where the objecting tenant is removed from the home based on a *legitimate,* nonpretextual arrest." *Henderson,* 536 F.3d at 783 n. 5.

¶ 39 We find *Henderson* persuasive to the similar facts presented here. After they safely defused the standoff, the police arrested and took Strimple to the police station in connection with his serious threats to police and the domestic violence allegations—not for the purpose of avoiding his objection to gain entry to the house to search for more evidence against him. They conducted a focused search based on Thompson's request to find and remove all dangerous weapons from the home. The *Randolph* court pointed out that the prosecution in that case did not argue "any indication to the police of a need for protection inside the house." 547 U.S. at 123, 126 S.Ct. 1515.

¶ 40 The police officers were under no obligation to contact Strimple at the police station and obtain his consent to search the home, in addition to obtaining Thompson's consent. Both warrantless searches were reasonable and valid.

### III.

¶ 41 Accordingly, we reverse the trial court's suppression order and return this case to the trial court for further proceedings consistent with this opinion.

Chief Justice BENDER dissents.

Chief Justice BENDER, dissenting.

¶ 42 The majority holds that the officers' removal of a physically present, objecting co-tenant vitiates that tenant's objection to a search and renders a warrantless search reasonable. In so holding, the majority misinterprets the Supreme Court's holding in *Georgia v. Randolph* that, absent exigent circumstances, "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." 547 U.S. 103, 122–23, 126 S.Ct. 1515, 164 L.Ed.2d 208

(2006). The majority also conflates the exigent circumstances exception with the consent exception to the constitutional requirement of a warrant. In my view, the trial court properly suppressed the evidence obtained in the warrantless search of Strimple's home. Hence, I respectfully dissent.

## I.

¶ 43 The majority misconstrues the holding of *Randolph* based on its reading of one line of dicta. In *Randolph*, the defendant and his wife were involved in a domestic dispute. *Id.* at 107, 126 S.Ct. 1515. Randolph's wife contacted the police, and when they arrived, she told them that her husband used drugs and that there were "items of drug evidence" in the home. *Id.* (internal quotation omitted). The police officer asked Randolph for permission to search the house, which he unequivocally refused. *Id.* The officer then turned to Randolph's wife for consent to search, which she readily gave. *Id.* She led the officers upstairs to a bedroom where the officer noticed a section of a drinking straw with a powdery residue that he suspected to be cocaine. *Id.* As a result of this evidence, the police obtained a warrant to search the home, leading to the discovery of additional evidence. *Id.*

¶ 44 Randolph moved to suppress the evidence as products of a warrantless search of his house that was unauthorized, despite his wife's consent, because he expressly refused consent. *Id.* The trial court denied the motion, ruling that Randolph's wife had common authority to consent to the search. *Id.* at 107–108, 126 S.Ct. 1515. The Court of Appeals of Georgia reversed and was affirmed by the Supreme Court of Georgia. *Id.* at 108, 126 S.Ct. 1515.

¶ 45 The U.S. Supreme Court upheld the ruling of the Supreme Court of Georgia. *Id.*

at 123, 126 S.Ct. 1515. The Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120, 126 S.Ct. 1515. The Court acknowledged it was drawing a fine line in holding that "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search," whereas if a potential objector is nearby but not invited to take part in the threshold colloquy, a co-tenant's permission allows for a reasonable search. *Id.* at 121, 126 S.Ct. 1515. The Court justified this narrow line, finding practical value in a rule determining consent based on the presence or absence of an objecting co-tenant:

> So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

*Id.* at 121–22, 126 S.Ct. 1515.

¶ 46 The meaning of this sentence has been a significant point of contention in the progeny of cases succeeding *Randolph*, resulting in a split among the circuits. The Seventh and Eighth Circuits, in decisions where one or more judges dissented,[1] ruled that this sentence means the police may remove an objecting co-tenant (and thus negate his objection and render the search reasonable), provided there exists some basis to remove the co-tenant aside from avoiding his objection.[2] See *Hudspeth*, 518 F.3d 954,

---

1. In the Seventh Circuit, one judge dissented. *U.S. v. Henderson*, 536 F.3d 776 (7th Cir.2008). In the Eighth Circuit, the initial panel concluded that the co-tenant's consent did not overrule the defendant's objection to the search, rendering the warrantless search unreasonable. *U.S. v. Hudspeth*, 459 F.3d 922, 931 (8th Cir.2006). However, upon rehearing en banc, the court held, with three judges dissenting, that the Fourth Amendment was not violated by the

search. *U.S. v. Hudspeth*, 518 F.3d 954, 961 (8th Cir.2008).

2. This approach is particularly problematic in Colorado, where the law requires law enforcement to arrest immediately a person suspected of committing a crime of domestic violence. *See* § 18–6–803.6(1), C.R.S. (2011). Hence, there is a high probability that the objecting co-tenant will be removed in every domestic violence case.

*Henderson,* 536 F.3d 776. In contrast, the Ninth Circuit construed this same sentence by holding that "[i]f the police cannot prevent a co-tenant from objecting to a search through arrest, surely they cannot arrest a co-tenant and then seek to ignore an objection he has already made." *U.S. v. Murphy,* 516 F.3d 1117, 1124–25 (9th Cir.2008).

¶ 47 I find the Ninth Circuit's impeccable logic and reasoning persuasive and in line with the letter and purpose of the Fourth Amendment, exceptions to which are "jealously and carefully drawn." *Jones v. U.S.,* 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). There is no reason that Strimple's arrest should vitiate the objection he had already registered to the search. *See Murphy,* 516 F.3d at 1124. *Randolph* establishes the rule "that when one co-tenant objects and the other consents, a valid search may occur only with respect to the consenting tenant." *Id.* at 1125. No evidence seized after an objection may then be used against the objecting co-tenant. *Id.*

## II.

¶ 48 The majority mistakenly conflates the consent exception with the exigent circumstances exception to the warrant requirement. The *Randolph* majority rejected the *Randolph* dissent's "red herring" that the rule in *Randolph* would compromise the capacity of the police to protect domestic violence victims. *Randolph,* 547 U.S. at 118–20, 126 S.Ct. 1515, *see also id.* at 127, 126 S.Ct. 1515 (Breyer, J., concurring). The *Randolph* majority emphasized that there was no question about the authority of the police to enter a dwelling to protect a resident from domestic violence. *Id.* at 118, 126 S.Ct. 1515. The *Randolph* majority distinguished the consent exception and the exigent circumstances exception, holding that "[t]he undoubted right of the police to enter in order to protect a victim ... has nothing to do with the question in this case, whether a search with the consent of one co-tenant is good against another, standing at the door and expressly

refusing consent." *Id.* at 118–19, 126 S.Ct. 1515.

¶ 49 Despite this distinction, the majority in this case relies on *Randolph*'s clarification on this issue and holds that a warrantless search for weapons in Strimple's home can also be upheld based upon "exigent circumstances and a reasonable need to protect the safety of the domestic abuse victim and the children remaining in the house." Maj. op. at 1225, ¶ 28. In so doing, the majority conflates its analysis of the consent exception to the warrant requirement with the exigent circumstances exception—a line of reasoning expressly rejected in *Randolph.* 547 U.S. at 118–19, 126 S.Ct. 1515.

¶ 50 In my view, the facts do not support the majority's proposition that exigent circumstances existed to justify the second search of Strimple's home. At the time of the second search, law enforcement had conducted a protective sweep of the residence, secured the children within it, and seized one firearm, the location of which Strimple had disclosed to law enforcement. Two of the children were removed and the others remained with their mother in the residence. Strimple had been arrested, taken to the police station, and was no longer an immediate threat. Strimple's wife then indicated to the police officers that there might have been "other weapons" in the residence, and requested that the police officers secure and remove those weapons because she was concerned about what Strimple might do when he returned.

¶ 51 The trial court found that at this point in time, there was "no longer an emergency circumstance that excepted the police from the warrant requirement of the [Fourth] Amendment." The mere presence of firearms in a home with children does not create an exigent circumstance—many citizens lawfully possess weapons in their homes with small children present. At this point in time law enforcement had no knowledge that one of these potential "other weapons" was an explosive device, which might have created an exigent circumstance.[3] *See People v.*

---

3. The majority quotes language from the trial court's order that the pipe bomb was a "dangerous" device that "would have been unreasonable to preserve" to support their contention that there existed exigent circumstances justifying the warrantless search. Maj. op. at 1224, ¶ 29.

*Winpigler*, 8 P.3d 439, 444 (Colo.1999) ("The existence of probable cause and exigent circumstances must be determined by evaluating the facts available to the police at the time of the warrantless entry and search."). There was also no risk of the destruction of evidence because Strimple was secured in police custody.

¶ 52 In the absence of exigent circumstances and in light of Strimple's unequivocal objection to a search of his home, the police were without lawful authority to conduct a second search without first obtaining a warrant,[4] and the trial court properly suppressed the evidence obtained in this illegal search. The majority opinion, in my view, rests upon

one sentence of dicta from *Randolph* to contradict *Randolph*'s ultimate holding that a warrantless search of a shared dwelling over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident. *Randolph*, 547 U.S. at 120, 126 S.Ct. 1515. Hence, I respectfully dissent.

---

However, this part of the trial court's order covered the denial of Strimple's motion to dismiss based on destruction of evidence due to law enforcement's detonation of the device at the scene, which deprived Strimple of the opportunity to test the device with an independent expert. The trial court specifically found that there was not an emergency situation at that point in time.

4. I note that obtaining a warrant could likely have been easily accomplished with the testimony of Strimple's wife that there were additional weapons she feared would be used against her.