2013 CO 28

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Kim Maurice FUERST, Defendant–Appellee.**

**Supreme Court Case No. 13SA39**

Supreme Court of Colorado.

May 20, 2013

---

Attorneys for Plaintiff–Appellant: Pete Hautzinger, District Attorney, Twenty–First Judicial District, Daniel P. Rubinstein, Chief Deputy District Attorney, Grand Junction, Colorado.

Attorneys for Defendant–Appellee: Douglas K. Wilson, Colorado State Public Defender, Thea Reiff, Deputy State Public Defender, Grand Junction, Colorado.

JUSTICE RICE delivered the Opinion of the Court.

¶ 1 In this suppression case, we hold that Respondent Kim Maurice Fuerst's decision to silently remain behind a locked door inside his home did not constitute an express refusal of consent to a police search. Therefore, Fuerst's wife's free and voluntary consent to the search of the couple's home was valid as to Fuerst. We accordingly reverse the order of the trial court granting Fuerst's motion to suppress evidence obtained during the search.

## I. Facts and Procedural History

¶ 2 Police arrived at the Fuerst residence on September 10, 2011, in response to a possible protection order violation. Two officers knocked on the front door of the home and received no reply. Believing someone was inside, one of the officers called Fuerst's wife on the phone and asked her to answer the door. Fuerst's wife cooperated with the request, stepped out onto the porch, and informed the police that Fuerst was indeed inside.

¶ 3 One of the officers then asked Fuerst's wife if the police could enter the residence. Fuerst's wife consented, led the officers inside, and indicated that Fuerst was in a bedroom with the door closed. The officers found the bedroom door locked, but managed to unlock it and go inside. Nothing in the record indicates that Fuerst expressly objected to this entry—or that Fuerst said anything—while the officers unlocked the door.

¶ 4 The officers entered the bedroom and found Fuerst awake, sitting on the floor, and in the company of numerous firearms. Aware of Fuerst's potential protection order violation, the officers detained Fuerst and removed him from the residence. The officers later learned that Fuerst was a convicted felon. The State charged Fuerst with four counts of Possession of a Weapon by a Previous Offender and three counts of Violation of Protection Order. The case was scheduled for trial.

¶ 5 Prior to trial, Fuerst filed a motion to suppress any evidence, observations, or statements obtained as a result of the officers' search of his residence on the grounds that the warrantless search violated Fuerst's rights under the Fourth Amendment of the United States Constitution and its equivalent in the Colorado Constitution.

¶ 6 The trial court granted Fuerst's motion. It found that Fuerst was a co-occupant of the residence, was physically present when the officers entered, and "refused to permit entry into the bedroom by remaining behind a locked door." The trial court reasoned that this "refusal to permit entry into the bedroom" prevailed over Fuerst's wife's valid consent to enter and search the residence. The trial court therefore found that the officer's search of the bedroom was "unreasonable and invalid as to [Fuerst]."

¶ 7 The People petition this Court for interlocutory review of the trial court's order pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2012). We now consider whether the trial court erred in concluding that Fuerst's decision to silently remain behind a locked door constituted a refusal of consent sufficient to prevail over the undisputedly valid consent granted by Fuerst's wife.

## II. Analysis

¶ 8 Fuerst's decision to silently remain behind a locked door inside his home did not constitute an express refusal of consent to a police search. Therefore, Fuerst's wife's free and voluntary consent to the search of the residence was valid as to Fuerst.

¶ 9 After describing the applicable standard of review, we discuss the Fourth Amendment principles that apply when police search a home with multiple tenants. Applying the law to the facts of this case, we hold that Fuerst's wife's free and voluntary consent was valid as to Fuerst because Fuerst did not expressly refuse to consent to the police search of the couple's home.

### A. Standard of Review

¶ 10 In reviewing the trial court's suppression order, we defer to "the trial court's findings of historical fact and do not disturb those findings if they are supported

by competent evidence in the record." *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo. 2011) (citing *People v. McClain*, 149 P.3d 787, 789 (Colo.2007)). We review the trial court's application of law, however, de novo. *Id.* (citing *People v. Syrie*, 101 P.3d 219, 222 (Colo.2004)).

## B. Consent to Search a Residence with Multiple Tenants

■ ¶ 11 The United States and Colorado Constitutions protect individuals from unreasonable searches and seizures of their homes. U.S. Const. amend. IV; Colo. Const. art. II, § 7. A warrantless search of a home by the police is presumptively unreasonable. *People v. Winpigler*, 8 P.3d 439, 443 (Colo.1999); see *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "To overcome this presumption, the prosecution has the burden of establishing that the warrantless search is . . . justified under one of the narrowly defined exceptions to the warrant requirement." *Winpigler*, 8 P.3d at 443 (citation omitted). A search conducted pursuant to the free and voluntary consent given by a person with "common authority" over the premises constitutes one such exception. *People v. Strimple*, 2012 CO 1, ¶ 20, 267 P.3d 1219, 1223.

■ ¶ 12 It follows that in home search cases involving more than one tenant, "the voluntary consent of any joint occupant of a residence to search the premises . . . is valid against the co-occupant, permitting evidence discovered in the search to be used against [the co-occupant] at a criminal trial." *United States v. Matlock*, 415 U.S. 164, 169, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). If one co-tenant is not at home during the search, "the consent of one who possesses common authority over [the] premises . . . is valid as against the absent, nonconsenting person with whom that authority is shared." *Id.* at 170, 94 S.Ct. 988.

■ ¶ 13 In contrast, " 'a physically present inhabitant's *express refusal* of consent' prevails, regardless of the consent of the fellow occupant, and a search in spite of the objection is unreasonable under the Fourth Amendment." *Strimple*, 2012 CO 1, ¶ 25, 267 P.3d at 1224 (citing *Georgia v. Randolph*,

547 U.S. 103, 122–23, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006)) (emphasis added). If, however, a potentially objecting co-tenant is "nearby but not invited to take part in the threshold colloquy" regarding consent to search the premises, the potentially objecting co-tenant "loses out" and the present co-tenant's affirmative consent to the search controls. *Randolph*, 547 U.S. at 121, 126 S.Ct. 1515. Holding otherwise would "needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field" and would cause every co-tenant consent case "to turn into a test about the adequacy of the police's efforts to consult with a potential objector." *Id.* at 122, 126 S.Ct. 1515. We now assess the instant case within this legal framework.

## C. Application

■ ¶ 14 Fuerst's wife's free and voluntary consent to the police search of the residence was valid as to Fuerst because he did not expressly refuse to consent. The parties do not dispute, and the trial court found as a matter of fact, that the officers conducted the search pursuant to the free and voluntary consent given by a person with common authority over the premises, Fuerst's wife. See *Strimple*, 2012 CO 1, ¶ 20, 267 P.3d at 1223. Because Fuerst and his wife were co-tenants, Fuerst's wife's voluntary consent to search the premises was valid as to Fuerst so long as Fuerst did not expressly refuse to consent. See *Matlock*, 415 U.S. at 169–70, 94 S.Ct. 988; *Strimple*, 2012 CO 1, ¶ 25, 267 P.3d at 1224 (citing *Randolph*, 547 U.S. at 122–23, 126 S.Ct. 1515).

¶ 15 Although Fuerst was in the home during the search and might have had incentive to object to the officers' actions, Fuerst did not expressly refuse to consent. See *Strimple*, 2012 CO 1, ¶¶ 25–26, 267 P.3d at 1224. We reject the trial court's conclusion of law that Fuerst's silence behind the locked bedroom door constituted an express refusal of consent for several reasons. First, although Fuerst's wife indicated that Fuerst was inside the locked bedroom, the officers did not actually know whether Fuerst was behind that door at the time of the search. Fuerst, for example, might have jumped out

the window when he heard police enter the house, or his wife might have been covering for him while he hid in another room. Second, had the officers correctly believed that Fuerst was inside the bedroom, Fuerst's silence could have resulted from him being asleep or unconscious; it did not necessarily indicate an express refusal to consent to the search.

¶ 16 By remaining silent behind a locked bedroom door, Fuerst was more like an absent co-tenant who, even if nearby when his co-tenant consents to a police search, "loses out" on his opportunity to refuse consent. *See Randolph*, 547 U.S. at 121, 126 S.Ct. 1515; *see also Matlock*, 415 U.S. at 170, 94 S.Ct. 988. Just as the United States Supreme Court reasoned in *Randolph*, interpreting Fuerst's silence in the locked bedroom—in hindsight—as an express refusal of consent would "needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field" and would cause every co-tenant consent case "to turn into a test about the adequacy of the police's efforts to consult with a potential objector." *Randolph*, 547 U.S. at 122, 126 S.Ct. 1515; *see Strimple*, 2012 CO 1, ¶ 40, 267 P.3d at 1226 (holding that police officers were under no obligation to contact an absent co-tenant and obtain his consent to search the home after obtaining the absent co-tenant's wife's consent). We decline to adopt such an unnecessary rule. Accordingly, we hold that Fuerst did not expressly refuse to consent to the police search and, therefore, his wife's consent to the search was valid as to Fuerst.

### III. Conclusion

¶ 17 Fuerst's wife's free and voluntary consent to search the residence was valid as to her co-tenant, Fuerst. Fuerst's silence behind the locked bedroom door did not constitute an express refusal of consent. We therefore reverse the trial court's order suppressing the evidence police obtained during the search of the Fuerst residence on September 10, 2011, and remand for further proceedings consistent with this opinion.

¶ 18 JUSTICE HOBBS concurs in the judgment only, and JUSTICE EID and JUSTICE COATS join in the concurrence in the judgment only.

JUSTICE HOBBS, concurring in the judgment only.

¶ 19 I respectfully concur in the judgment on alternate grounds. In my view, we need not reach the question of whether silently remaining behind a locked door constitutes a refusal of consent sufficient to overcome a co-tenant's consent. Under the circumstances, the officers were aware that Fuerst had no right to enter the residence and so did not share "mutual use of the property" or "joint access or control for most purposes" with his wife at the time she validly consented to the officers' entry. *Georgia v. Randolph*, 547 U.S. 103, 110, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) (quoting *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). Therefore, even Fuerst's express refusal of consent would not have rendered the officers' entry—for the purpose of investigating the suspected protection order violation—unreasonable.

### I.

¶ 20 Two police officers were dispatched to the Fuerst residence on September 10, 2011, to investigate a suspected protection order violation. Successive mandatory protection orders had barred Fuerst from entering the residence since November 14, 2010. The officers had been to the residence on the previous two nights for the same reason and had arrested Fuerst on one of the nights. When the officers arrived, one knocked at the front door. After receiving no response, the officer called Fuerst's wife. She answered her phone, acknowledged that both she and Fuerst were inside the residence, and agreed to step out onto the front porch to talk. Subsequently, she confirmed Fuerst was inside. She consented to let the officers enter the residence, pointing out the back bedroom in which Fuerst was located. Although Fuerst had locked the door, the officers succeeded in disabling the lock from the outside and entered the room. There they found Fuerst seated on the floor with a book in front of him. They also observed several firearms in the room. The officers arrested

Fuerst based on probable cause to believe he had violated the protection order. Later, they learned Fuerst was a convicted felon.

¶ 21 The district attorney charged Fuerst with four counts of possession of a weapon by a previous offender, § 18–12–108(1), (2)(c), C.R.S. (2012), and three counts of violation of a protection order, § 18–6–803.5, C.R.S. (2012). The Complaint and Information lists counts 5, 6, and 7 as follows:

> On or about September 8, [9, 10,] 2011, Kim Maurice Fuerst, who had been personally served with a protection order issued pursuant to section 18–1–1001, C.R.S.or had otherwise acquired from the court or law enforcement personnel actual knowledge of the contents of such a protection order, *unlawfully and knowingly entered or remained upon a premise, namely: [the Fuerst residence] ..., a type of conduct prohibited by the protection order;* in violation of section 18–6–803.5, C.R.S.

(Emphasis added).

¶ 22 Fuerst moved to suppress all evidence obtained as a result of the officers' warrantless entry of the bedroom. The trial court granted his motion, stating that Fuerst "was a co-occupant of the residence, [he] was physically present when officers entered, and [he] refused to permit entry into the bedroom he occup[ied] by remaining behind a locked door." These circumstances, the trial court concluded, "render[ed] the search of the bedroom [Fuerst] occupied unreasonable and invalid as to [Fuerst]."

## II.

¶ 23 The United States and Colorado Constitutions prohibit unreasonable searches and seizures. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7. A search conducted without a valid warrant is presumptively invalid unless justified by one of the exceptions to the warrant requirement, which are based on "the ultimate touchstone of the Fourth Amendment"—reasonableness. *People v. Strimple,* 2012 CO 1, ¶ 20, 267 P.3d 1219, 1223 (quoting *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)). "The constant element in assessing ... reasonableness ... is the great significance given to widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules." *Randolph,* 547 U.S. 103, 111, 126 S.Ct. 1515 (2006).

¶ 24 As the majority makes clear, "free and voluntary consent given by a person with 'common authority' over the premises" overcomes the presumption that a warrantless search of a home is unreasonable. Maj. op. ¶ 11 (citing *People v. Winpigler,* 8 P.3d 439, 443 (Colo.1999), and *Strimple,* ¶ 20, 267 P.3d at 1223). Consistent with "commonly held understandings about the authority that co-inhabitants may exercise in ways that affect each other's interests," common authority to consent to a search may "be broader than the rights accorded by property law, although its limits, too, reflect specialized tenancy arrangements apparent to the police." *Randolph,* 547 U.S. at 110–11, 126 S.Ct. 1515 (citation omitted). Thus, common authority rests

> on *mutual use of the property by persons generally having joint access or control for most purposes,* so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 110, 126 S.Ct. 1515 (emphasis added) (quoting *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988). Therefore, where "one co-tenant is not at home during the search, 'the consent of one who possesses common authority over [the] premises ... is valid as against the absent, nonconsenting person with whom that authority is shared.'" Maj. op. ¶ 12 (quoting *Matlock,* 415 U.S. at 170, 94 S.Ct. 988).

¶ 25 On the other hand, "'a physically present inhabitant's express refusal of consent' prevails, regardless of the consent of the fellow occupant, and a search in spite of the objection is unreasonable under the Fourth Amendment." Maj. op. ¶ 13 (emphasis omitted) (quoting *Strimple,* ¶ 25, 267 P.3d at 1224). This is because "a caller standing at the door of shared premises would have no confidence that one occupant's invitation was

a sufficiently good reason to enter when a fellow tenant stood there saying, 'stay out.'" *Randolph,* 547 U.S. at 113, 126 S.Ct. 1515. Under those circumstances, absent "some very good reason, no sensible person would go inside." *Id.*

¶ 26 In *Randolph,* the United States Supreme Court offered several factual scenarios in which "no common authority could sensibly be suspected." *Id.* at 112, 126 S.Ct. 1515. The Court explained that

> [a] person on the scene who identifies himself, say, as a landlord or a hotel manager calls up *no customary understanding of authority to admit guests without the consent of the current occupant.* ... And when it comes to searching through bureau drawers, there will be instances in which even a person clearly belonging on premises as an occupant [such as a child] may lack any perceived authority to consent.

*Id.* (emphasis added).

¶ 27 This case presents such a set of facts. Although Fuerst had a proprietary interest in the residence, the police knew a protection order prohibited him from entering or remaining on the property. At the time Fuerst's wife consented to the officers' entry, Fuerst did not share—and had not shared for almost ten months—the right to "mutual use of the property" or "joint access or control for most purposes." *Id.* at 110, 126 S.Ct. 1515 (quoting *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988). Fuerst's wife—not Fuerst— had rightful use, access to, and physical control of the residence. Fuerst had no right to be there at all[1] and did not "belong[ ] on [the] premises as an occupant."[2] *Id.* at 112, 126 S.Ct. 1515. Consequently, this is not a situation in which resolution of a disagreement over the use of the premises would logically "come through voluntary accommodation." *Id.* at 113–14, 126 S.Ct. 1515.

¶ 28 In conclusion, while "there is no common understanding that one co-tenant generally has a right or authority to prevail over the express wishes of another," *id.* at 114, 126 S.Ct. 1515, under the circumstances of this case, Fuerst lacked authority to negate his wife's consent for police to search the residence in order to investigate the suspected protection order violation.

¶ 29 Accordingly, I would not reach the issue the majority addresses and respectfully concur in the judgment only.

¶ 30 I am authorized to state that Justice COATS and Justice EID join in the concurrence in the judgment only.

---

1. *Cf. People v. Breidenbach,* 875 P.2d 879, 888–89 (Colo.1994) (citing the holding of *United States v. Cook,* 530 F.2d 145, 149 (7th Cir.), *cert. denied,* 426 U.S. 909, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976), that common authority over property existed where owners maintained the right to access and use the property, and concluding consent to search was valid where the consenter had an unrestricted right to enter the area searched).

2. In this respect, he was more akin to a landlord than to a co-tenant with common authority. Despite maintaining an ownership interest in the property, landlords generally lack authority to consent to a search of their tenants' premises. *See Breidenbach,* 875 P.2d at 888 (citing *Chapman v. United States,* 365 U.S. 610, 616–17, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961)).